## ASSESSMENTS FOR SEWERS FORMING PART OF A MUNICIPAL SYSTEM.

Circuit Court of Lorain County.

WILLIAM A. ELY v. CITY OF ELYRIA ET AL; AND JOHN P. BROOKS ET AL V. CITY OF ELYRIA ET AL.

Decided, April 20, 1912.

*Assessments—Validity of, Where Levied for a Sewer—Present Sewer Connections Not Sufficient to Exempt Property Served Thereby, When—Section 3819.*

1. The clause of Section 3819, which exempts from sewer assessments lots and lands which are provided with local drainage, does not apply to property which is already supplied with a sewer of sufficient capacity to provide drainage therefor, but which does not

provide drainage of such a character as to protect the public health and general welfare.

2. An assessment for a sanitary sewer, forming part of the general sewer system of a municipality, will not be enjoined on the ground that the property of the plaintiff is already provided with a sewer, where the present sewer empties into a water-course, which is to be protected from further contamination by the building of the new sanitary system.

*L. B. Fauver*, for plaintiff.

*G. B. Findley*, for defendant.

NIMAN, J.; MARVIN, J., and WINCH, J., concur.

Appeal from common pleas court.

These cases are here on appeal, and involving a similar, though not an identical, state of facts, they will be considered together.

The plaintiffs in both cases seek to enjoin the collection of special assessments against their respective properties for the building of a sewer. The properties of the plaintiffs are located on the south side of Broad street, in the city of Elyria. The Ely property adjoins the Brooks property on the east.

The sewer for which the assessments in question were made is a sanitary sewer, constructed by the city of Elyria in 1911, in Broad street. It passes through said street in front of the properties of the plaintiffs, and joins with a sewer on Washington avenue, which is carried north in this street, over the bridge and on in the same direction to a point where the city designs to erect a sewage disposal plant.

A number of grounds are set forth in the respective petitions to establish the illegality of the assessments, and the right of the plaintiffs to the relief sought. The ground relied upon, however, by the plaintiffs is, that their properties are not benefited by this new sewer, for the reason that they are already provided with local drainage.

Section 3819, General Code, limits assessments to the special benefits conferred upon the property assessed, and exempts from assessment any lots or lands that do not need local drainage, or which are provided therewith.

The question for determination, therefore, in these cases, is, whether or not the properties of the plaintiffs are provided with local drainage within the meaning of Section 3819.

In 1899 a sewer was constructed by the city of Elyria in East Broad street in front of the Ely property, running easterly into a sewer on East avenue. The Ely property was assessed for this sewer and the property was connected with it, and is still connected. Both the storm water and sanitary sewage are carried through this old sewer to the East avenue sewer, and through the latter northerly to the point where East avenue is crossed by Depot street. At this point is an intercepting basin, designed to separate the sanitary sewage from the storm water, which is then conveyed through the Depot street sewer with the main sanitary sewer on Washington avenue. The storm water is diverted and poured into Black river. Formerly both storm and sanitary sewage ran into the river.

The city has adopted a general sewer plan which contemplates the construction of sanitary sewers, and the disposal of the sewage collected through them, by means of a reduction plant outside of the city, in order that the waters of the river may not be contaminated, and the health and comfort of the people be interfered with by the creation of such a nuisance as will result from a continuation of the former practice of pouring all the sewage into the river. When the plan is carried out, it is designed to convey the storm water through the old sewers, but for temporary purposes, and to avoid further pollution of the river beyond what is unavoidable, a system of interceptors, such as the one at the intersection of East avenue and Depot street, for the separation of sanitary sewage and storm water has been installed, so that the sewage is diverted and carried out through the Washington avenue sewer to the point where the reduction plant is to be located, while the storm water is allowed to flow into the river. It appears, however, that this plan of interceptors is only a temporary arrangement permitted by the state board of health, until the disposal plant is built, and it further appears that by this plan some sewage still finds its way into the river.

The sanitary sewer constructed in Broad street in 1911, for

which the assessments in question were made, is a part of this general system of sewers.

If the simple fact that the old sewer carries off all the sewage from the Ely property in a manner satisfactory to the owner, and adequate to the needs of that particular property, is the only thing to be considered, the relief sought against the assessment in this particular case should be granted.    But it is not contemplated by the statute that the purpose of a sewer is simply to get rid of something on one's own land.    The welfare and protection of the public generally must be considered, as well as the convenience of the owner in determining the adequacy of the sewer.

In *Avondale* v. *Scudder*, 12 C. C., 770, it was said:

"The local drainage which is meant by Section 2382, Revised Statutes, is such a sewer, or such a system of sewers, as looking to the dimensions, the mode of construction, the material used, the location for the outlet and the sanitary conditions, as will not only benefit the persons who have constructed the sewers, but will not be detrimental to the rights of the public, not only of the present public, but of those who may, and who of right may, build in the vicinity where the sewer is located."

The city of Elyria, owing to its rapid growth, has found that its former sewer system is inadequate, and that the public health is endangered by continuing to empty its sewers into the river; the health authorities have interfered and the city has devised a new system to secure present relief and take care of its future needs.    As a part of that system, it has constructed this sanitary sewer on Broad street in front of the property of the plaintiffs. The old sewer there contributed its share toward creating the necessity of the new one, and the Ely property, by disposing of its sanitary and storm sewage through this old sewer, and having it carried into the river, assisted in bringing about a condition which required relief in the form of a new system of which the Broad street sewer, built in 1911, is a part.    The old sewer, while physically adequate to supply local drainage to the Ely property, did not, in our opinion. supply such local drainage as the statute contemplates.

In this opinion we are supported by *Hildebrand* v. *Toledo*, 6 C.C.(N.S.), 450, where is was held that "a claim of adequate local drainage, based upon the right to allow sewage to drain into a natural water-course running through a municipality, is not sustained where such drainage will pollute the stream and create a nuisance and imperil the health of other riparian owners."

The fact that an interceptor is used to separate the sewage coming from the Ely property and from the other property using the old Broad street sewer does not, in our opinion, change the situation. The system of interceptors is, it appears, only a temporary one, and the use of such a system involves the use of the new system of sanitary sewers, of which the new broad street sewer is a part, and the Ely property is to that extent the beneficiary of the new system. It is urged that the property is not connected with the new sewer, and is not being used by it, but this situation often happens, as in the case of vacant property. It does not follow that because property is not connected with and does not make use of a sewer, it should be relieved from assessment for the cost thereof.

In *Ford* v. *Toledo*, 64 Ohio St., 92, it was held:

"Where the lot or land is in need of local drainage, it is not exempt because it is entirely unimproved, and there is no immediate need for such drainage. Vacant lots and lands may, and usually do receive a present special appreciable benefit from the construction of a sewer in proximity with, and accessible by them for sewage purposes, sufficient to sustain an assessment made on a basis of benefits."

We decide, therefore, that as to the first of these actions, the Ely suit, the contention of the plaintiff that his property is already adequately provided with local drainage is not well founded within the meaning of Section 3819, General Code.

In the Brooks case, it appears that the property of the plaintiffs is not connected directly with any sewer constructed by the city, and has not been assessed for any sewer prior to the making of the assessments complained of. No sewer is found in Broad street in front of the property except the new one.

The former owner of this property, however, in conjunction with J. H. Kraus, in 1893, constructed at his own expense a private sewer, running from the Topliff hotel on the property diagonally across Broad street, which taps the city sewer on Washington avenue. This private sewer has drained all the sewage from the Brooks property since 1893, and is still used for both sanitary sewage and storm water. After passing through the private sewer, so constructed, the sewage and storm water are carried through an old city sewer on the west side of Washington avenue to an intercepting basin near the railroad tracks, where the sewage is separated and carried through the Washington avenue sanitary sewer and the storm water is conveyed to the river.

All that has been said in the Ely case on the subject of whether the property involved in that case is provided with adequate local drainage, within the meaning of Section 3819, is applicable to this case. But there is present here the additional fact that the private sewer, which is said to furnish adequate local drainage, is built on the city street, passing under the pavement, cross-walks and street railway tracks. According to the evidence, no formal consent was ever obtained to build it, nor to tap the city sewer, but its construction was known to the authorities and acquiesced in by them.

No right to have it remain in the city streets is shown, and its removal might be ordered at any time.

In *Hildebrand* v. *Toledo, supra,* it was held:

"'Lots are not provided with adequate local drainage, such as will exempt them from paying their share of an assessment levied to pay the cost of a sewer improvement, unless the right exists to dispose of sewage as it is at the time being disposed of, and the right to so continue is one that can not be interefered with; the present right must include not only the idea of permanency of structure, but also of control.'"

Permanency of control can not be said to exist where a private sewer, claimed to provide sufficient drainage, is built upon property of another from which it may be ordered removed at any time.

In view of the conclusions reached by us, the relief sought by the plaintiffs must be denied, and the petition in each case dismissed.